[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR CONTEMPT CODED #148
Many of the facts that give rise to this motion are not in dispute. The marriage between the parties was dissolved on August 7, 1997. The court approved of a written agreement between the parties and incorporated it by reference into the judgement file. Paragraph 4.2 of said agreement provided as follows.
 4.2 As additional periodic alimony, the Husband shall pay thirty per cent (30%) of all gross income received by him in excess of One Hundred Fifty Thousand Dollars ($150,000.00) per year and less than Three Hundred Thousand Dollars ($300,000.00) per year, and twenty-five percent (25%) of all such income in excess of Three Hundred Thousand Dollars ($300,000.00) per year. For purposes of this paragraph, "income" shall be defined as all earnings from employment or compensation for services rendered by the Husband, less reasonable and necessary business expenses, plus all contributions to any deferred compensation plans on the Husband's account. Compensation for service in the U.S. Army Reserves shall be included. The Husband is currently receiving a base salary from his employment as a physician of One Hundred Fifty Thousand Dollars ($150,000.00) per year, plus periodic bonuses. When a bonus is received by the Husband, he shall send the Wife's proportionate share to her within ten days of receipt of same, together with documentation of the amount of said bonus payment. No later than February 15th of each year, the Husband shall transmit to the Wife all W-2 and 1099 forms received for the prior calendar year, together with payment for any additional monies which may be due to her for her periodic alimony.
The parties are in dispute as to the applicable time period for the calculation of additional alimony as well as to which funds the defendant receives should be considered as income as well as what deductions from income should be allowed. These CT Page 15238 issues will be discussed seriatim.
 A. APPLICABLE TIME PERIOD FOR CALCULATION OF ADDITIONAL INCOME.
The parties are in dispute as to whether the plaintiff is entitled to receive any portion of any bonuses received by the defendant prior to August 7, 1997. The plaintiff argues that she is entitled to the thirty percent bonuses for the full calendar year 1997 in excess of income received by the defendant of $150,000.00 per year. The court is not persuaded by that argument.
Various pendente lite orders were entered in this case prior to August 7, 1997. On September 10, 1996, the parties entered into an agreement coded #110. That agreement provided in part for an order of joint legal custody for the three minor children with the plaintiff wife designated as the primary residential parent. It required the defendant to pay to the plaintiff the sum of $1,200.00 per week as unallocated alimony and support which sum shall be nontaxable to the plaintiff and nondeductible to the defendant. The defendants financial affidavit dated September 9, 1996 showed gross weekly income of $3,010.00 from his employment as a medical doctor. On March 20, 1997 the plaintiff filed a motion to modify the pendente lite support order coded #128. That motion alleged that on September 10, 1996 a pendente lite order of unallocated alimony and support was entered based on the defendant's representation that his gross annual income was $156,520.00 and that through discovery process the plaintiff has learned that the defendant's 1996 compensation was in fact $291,500.00. The parties entered into an agreement dated April 15, 1997 coded #130 that was approved of the court that provided in part that the defendant shall continue to hold the proceeds of the 1996 year end bonus pursuant to the order of September 10, 1996 which order also granted the plaintiff's motion for injunction re transfer of assets coded #103. The agreement also provided that the plaintiff shall receive $8,500.00 of said 1996 year end bonus funds forthwith as additional nontaxable support and agrees not to pursue her motion for modification for pendente lite support before July 15, 1997.
On August 4, 1997, the defendant filed a financial affidavit dated August 4, 1997 filed stamped August 7, 1997 and coded #139. That affidavit showed as sources of income the following:
1. Income from principal employment $2,885.00 gross weekly. CT Page 15239
2. Income from bonus $2,692.00 gross weekly.
3. Income from Army/Yale $90.00 gross weekly.
His financial affidavit showed on an attached schedule a deduction for pre-taxed business expenses on any year end bonus in the amount of $420.00 weekly.
It is clear from the plaintiff's motion dated March 20, 1997 coded 128 and the agreement dated April 15, 1997 and coded 130 and the defendant's financial affidavit dated August 4, 1997 that the plaintiff was aware of the fact that the defendant had substantial bonus income in addition to his regular income as of the date of dissolution on August 7, 1997. In Barnard v.Barnard, 214 Conn. 99 (1990) the court was faced with the interpretation of a provision in a written separation agreement regarding an obligation to pay post-majority college course. The Barnard court stated in part at page 116 as follows:
 Where parties have their agreement in writing "`their intention is to be determined from its language and not on the basis on any intention either may have secretly entertained'" . . . "parties generally do not insert meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible."
In interpreting the agreement before the court in the Barnard case, the court looked at the various provisions of the agreement in determining the intention of the parties.
Article 4.1 of the agreement provided that effective June 1, 1997 the husband shall pay to the wife periodic alimony in the sum of $200.00 per week. The effect of that was that payments made by the husband to the wife between June 1, 1997 and August 9, 1997 became tax deductible by the husband. There is no provision in Article 4 for bonuses received by the husband retroactive to January 1, 1997 to be part of the 30% that he was to pay to the plaintiff. The agreement in this case provided in part that the defendant was to pay to the plaintiff support in the amount of $600.00 per week and alimony in the amount of $200.00 per week together with the additional alimony as provided in Article 4.2 of the agreement which provided in part as follows:
 When a bonus is received by the husband, he CT Page 15240 shall send the wife's proportionate share to her within 10 days of receipt of same, together with documentation of the amount of said bonus payment.
Article 3.1 of the agreement provided for support to commence effective June 1, 1997.
Article 4.2 provided that "when a bonus is received by the husband" and did not state that "when a bonus is received by the husband including all prior bonuses received in the calendar year 1997." If the parties had intended the bonus provision in Article 4.2 to include all bonuses previously received in the calendar year 1997 prior to dissolution then the agreement should have so provided. The agreement also provided in Article 4.4 that alimony shall continue until the death of the husband the death of the wife or June 1, 2003, whichever shall first occur. The agreement provided in Article 6.2 that the husband shall assign his interest in his 401(k) plan as of December 31, 1996. This provision clearly shows that the parties understood how to provide for an assignment with a retroactive date. The agreement did not provide for the husband to pay bonuses as of January 1, 1997. The agreement also provided in Article 7 that the husband shall pay to the wife the sum of $20,000.00 which represents a portion of the bonus from December 1996 which is being held. The balance of said bonus was to be the sole property of the husband. There was no provision in Article 7 for the husband to pay to the wife any portion of bonuses received between January 1, 1997 and June 1, 1997.
Article 4.2 of the agreement also provides that no later then February a 15th of each year, the husband shall transmit to the wife all W-2 and 1099 forms received for the prior calendar year.
This court concludes that for the purposes of the bonus provision of Article 4.2 that the reference to gross income in excess of $150,000.00 per year refers to a calendar year and not a fiscal year of June 1 to June 1. Further, the 30% additional alimony is to be based on a pro rata basis of $150,000.00. There are seven months in the calendar year from June 1, 1997 through December 31, 1997. 7/12 of $150,000.00 amounts to $87,500. Therefore for the period of June 1, 1997 through December 31, 1997 the plaintiff is entitled as additional periodic alimony to receive 30% of all gross income received by the defendant in excess of $87,500.00. CT Page 15241
In view of the provisions of Article 3.1 for child support to commence effective June 1, 1997 and the provisions of Article 4.1 for alimony to be effective June 1, 1997 and the provision Article 4.4 for alimony to terminate June 1, 2003 this court concludes that for purposes of additional alimony that the effective date should be June 1, 1997 with the plaintiff sharing in any excess income received by the defendant on and after June 1, 1997.
 B. Funds Considered as Income
The parties are also in dispute as to what sources of income received by the defendant should be included as part of his gross income.
The defendant received a bonus on July 31, 1997 in the amount of $24,493.80 and bonus on August 31, 1997 in the amount of $24,608.73. He paid to the plaintiff $3,348.14 after receiving his bonus of $24,493.80. The 30% amount that should have been paid amounts of $7,348.14. In addition to the payment of $3,348.14 the defendant is entitled to a credit in the amount of $3,600.00 for a retroactive reduction in support. The $3,600.00 plus the $3,348.14 totals $6,948.14 leaving a balance due of $400.00 regarding the $24,493.80 bonus. He also paid to the plaintiff $5,290.05 as a result of the bonus he received of $24,608.73. The 30% that he should have paid amounts to $7,382.62 leaving a balance due of $2,092.57. Both the $24,493.80 bonus and the $24,608.73 bonus are part of the defendant's gross income for purposes of the plaintiff's 30% additional alimony.
The claim of the plaintiff of 30% of the defendant's May 30, 1997 bonus of $40,090.20 is disallowed as that bonus was paid prior June 1, 1997.
The claim of the plaintiff to 30% of the profit sharing contribution by the defendant's employer of $16,000.00 is disallowed as that payment was made in the calendar year 1998 and should therefore be considered as part of the defendant's 1998 income. The defendant claims that the pension money should not be considered as it is not income. The court is not persuaded by that argument. Article 4.2 of the agreement provides that "for the purpose of this paragraph, `income' shall be defined as all earnings from employment or compensation for services rendered by the husband . . . plus all contributions to any deferred compensation plans on the husband's account." This was a contribution to a deferred compensation plan on the husband's CT Page 15242 account and is therefore clearly within the definition of income under the provisions of Article 4.2. Further Article 4.2 provides in part that "the husband shall transmit to the wife all W-2 and 1099 forms received for the prior calendar year, together with payment for any additional monies which may be due to her for her periodic alimony." The language of Article 4.2 shows an intent by the parties for the 30% additional alimony to be based on the calendar year in which the income is received. In this case the contribution to his pension plan was not received until 1998 and therefore becomes part of his 1998 income.
The defendant's employer also paid the defendant's accountant's fees for preparation of tax returns in the amount of $450.00. The court considered that payment to be "earnings from employment or compensation for services rendered" and therefore the plaintiff is entitled for 30% of the $450.00.
The defendant was also called to active duty after August 7, 1997. He receive total income from the army of $19,569.12. 30% of that amounts to $5,870.74. He paid to the plaintiff $4,706.51 plus $247.45. That totals $4,953.96, leaving a balance due of $916.78 regarding his army income. He was also employed at Yale Clinic where he received income of $1,847.10. 30% of that amounts to $554.13. He paid to the plaintiff $257.49 leaving a balance due of $296.64.
His total income from Center of Orthopedics for the period of June 1, 1997 through December 31, 1997 was $87,528.00. That amounts of $28.00 over the threshold amount of $87,500.00. The plaintiff is entitled to 30% of the $28.00 or $8.40.
 C. Claimed Deductions from Income
The defendant claims that a contribution made by him to his profit sharing plan of $7,600.00 should be deducted from his income for the purpose of the 30% payment. That claim is disallowed. The only deductions from income as to defined in Article 4.2 are "less reasonable and necessary business expenses." The contribution by the defendant to his profit sharing plan was not a reasonable and necessary business expense. As such it does not result in a reduction of his income for the purpose of the 30% payment to the plaintiff.
The defendant makes that following claim in his post-hearing memorandum date November 10, 1998: CT Page 15243
 The defendant received an overpayment of $28,192.00 from his medical group. (See Plaintiff's Exhibit 1). The accountant for the medical group testified that he discovered the overpayment in late December, 1997. The accountant added the overpayment to the Defendant's W-2 for the sake of expediency. The accountant testified that he did this due to the end of the year time constraints, holiday season, and the fact that the defendant did not have the money to pay it back. The accountant repeatedly testified that the overpayment of $28,192.00 was treated as loan which has to be paid back. The accountant reiterated that his advice to the medical firm was to deduct all of the overpayment from any bonuses received by the defendant in 1998. Due to the dissolution of the medical partnership in 1998 there have not been sufficient bonuses to permit the full repayment of the loan to date.
The court is not persuaded by that argument for a number of reasons. First, the plaintiff's Exhibit 1 does show that there is a claimed overpayment of $28,192.00. However, the defendant's employment contract with Center for Orthopedics shows in Schedule A the manner in which he is to be paid. The testimony of the accountant did not adequately address the formula in Schedule A. Secondly, there was adequate time for the alleged error to have been corrected. The defendant did not file his income tax return until March 12, 1998. The corporate tax return for Center for Orthopedics was not filed until August of 1998 for the year ending December 31, 1997. The balance sheet for Center for Orthopedics did not reflect any loan to the defendant for the year ending December 31, 1997. The corporation cannot now be heard to claim that it deducted for income tax purposes a payment to the defendant of $28,192.00 as salary and then claim that that money in fact was a loan to him. Had that money been a loan to him it would of had to of had income tax paid on it by the corporation. The defendant's 1997 income tax return dated March 12, 1998 shown as income all of the salary as bonuses received by him from Center for Orthopedics, P.C. including as income the alleged $28,192.00 loan. Finally, if in fact the $28,192.00 is repaid by the defendant to his employer then to the extent of such repayment, the repayments can be taken as a credit or reduction from his gross income in the year the repayments are made, for the purpose of calculating the 30% additional periodic alimony. CT Page 15244
 A. Sources of Income
The final calculation of alimony due to the plaintiff is as follows:
 1. Defendant's salary from The Center for Orthopedics June 1, 1997 through December 31, 1997 $ 87,528.00
 2. Defendant's income from United States Army Reserves 19,569.12
3. Defendant's income from Yale Clinic 1,847.10
 4. Additional income of defendant regarding payment of accountant's fees 450.00
5. Bonus Income 49,102.53
 TOTAL INCOME RECEIVED $158,496.75 Less $ 87,500.00 Amount for which the plaintiff is entitled to receive 30% $ 70,996.00 30% $ 21,299.02
The alimony payments received by defendant are:
Date Amount Source
August 7, 1997 3,348.14 2nd quarter bonus August 25, 1997 247.45 Army Reserves income November 14, 1997 5,290.05 3rd quarter bonus January 30, 1998 257.49 Yale income January 30, 1998 4,706.51 Army Reserves income February 11, 1998 144.72 Additional alimony Support Credit 3,600.00
Total Paid $17,594.36
The total amount due to the plaintiff was $21,299.02. The amount paid to her was $17,594.36. Leaving balance presently due to her of $3,704.66.
The court enters following orders: CT Page 15245
 ORDER
The defendant is pay to the plaintiff $3,704.66 by January 18, 1999. In addition he is to pay to her counsel fee in the amount of $3,000.00 by January 18, 1999. In the event the counsel fees and the $3,704.66 are not both paid by January 18, 1999, then a finding of contempt shall enter against the defendant and interest on both sums shall run at the rate of 10% retroactive to December 18, 1998.
Axelrod, J.